By the Court.—Speir, J.
The provision in the policy as to its being void reads as follows: “In case he (Benedict) shall die by his own hand in, or in conse *479 quen.ce of a duel, or by reason of intemperance from the use of intoxicating liquors, or by the hands of justice, this policy shall be void,” &c. The learned judge ruled that if he died by his own hand the true construction of the policy would render it void without reference to the fact whether he died in or in consequence of a duel or by reason of intemperance from the use of intoxicating liquors. The plaintiff’s counsel excepted to this ruling on the trial, but made no point of the exception on the argument.
The evidence proved satisfactorily that the wound which caused Mr. Benedict’s death was self inflicted with the intention of effecting that result. The testimony of the plaintiff showed that the insured died by his own hand. The defense to the action was thus prima facie established ; and to meet this the plaintiff attempted to prove that the assured was, afc the time of inflicting the wound, insane. The question, therefore, presented is, was the testimony offered for this purpose such as rendered it proper for the determination of the jury. If it was, the judge should have submitted it to them, and the dismissal of the complaint Avas erroneous. The rule in regard to the dismissal of the complaint is the same as directing a verdict. When there is no evidence, either may be done in the proper case; and in cases where there is some evidence given tending to show the fact, but insufficient to warrant a jury to find in accordance thereAvith, and the jury should so find, it would be the duty of the court to set aside the verdict, not in the exercise of its discretion for the promotion of justice, but for the reason that it was not warranted by the testimony.
Insanity cannot be presumed from the mere commission of the act. Self-destruction is often committed by the sane, and from daily experience the act cannot be predicated solely as a condition of the mind exclusively manifested by the insane. The policy in *480 this case contained a valid condition that if the assured died by his own hand (and he did so die), the presumption is, that he was sane at the time he committed the act. Sanity being the normal condition of man, it is presumed to exist, and this presumption must be removed, in order to prove a different condition of the mind, by clearly affirmative evidence or by circumstantial evidence wholly inconsistent with the hypothesis of sanity, and consistent with that of insanity. If consistent with both, the rule is plain that it must be disregarded in determining as to the truth of either.
It is proper we should keep in mind that the evidence is almost wholly circumstantial, consisting of facts relating to the conduct ■ of the assured, from which only inferences and conclusions may be drawn which may be consistent with either theory. Tested by the foregoing rule, I think the testimony insufficient to sustain a verdict that the assured was insane at the time of inflicting the wound which produced his death. It was proved that the assured was for a long time prior to his death engaged in extensive business affairs ; up to 1858, he was a merchant of high standing, vice-president of a bank, and an active officer in other important companies. He was trusted in large commercial transactions, and it does not appear he was at any time suspected of mental derangement, or gave indications of a diseased intellect. Although he was dangerously ill from congestion of the brain, and delirious in 1858, and suffered during fifteen or twenty years from nervous neuralgic pains in the head, at different periods, he would recover from these attacks and resume his business and ordinary habits of life. When suffering from these acute attacks, he was led to say that “ they would either drive him crazy or kill him.’’ The witnesses, consisting of his intimate friends and family, failed to give any instance of any act or symptom of mental aberration. On no occasion is it *481 shown that his mind was so far gone that it was not moving to the act. His physician, who attended him on the day of his death, did not notice any evidence of mental aberration. The preparation to compass his death by his own hand appears to have been planned with deliberation and seif possession. He took his son, and in his debility leaning on him as he ascended the stairs, entered the bath-room, told him to go down to his mother, - and, taking the pistol concealed in his pocket, received the fatal bullet. Under the decisions, in order to take the case out of the proviso, the party must have been insane to such a degree as to render him unconscious that the act he did would cause death, or he must have committed it under the influence of some insane impulse which he could not resist. The case shows, I think, a clear comprehension of the nature of the act he contemplated, and its voluntary and intentional commission.
The judgment must be affirmed with costs.
Sedgwick, J., concurred.